**C.S. TROSPER, Plaintiff–Appellee,**

v.

**D.B. WILKERSON, Jr., individually, Thoroughbred Car Company, Thoroughbred Datsun Car Company, and Wilkerson Motor Company, Inc., Defendants–Appellants.**

No. 87CA0335.

Colorado Court of Appeals,
Div. IV.

Oct. 13, 1988.

Johnson and Stevenson, Robert W. Johnson, Colorado Springs, for plaintiff-appellee.

Feder, Morris, Tamblyn & Goldstein, P.C., Leonard M. Goldstein, Stephen B. Schuyler, Denver, for defendants-appellants.

BABCOCK, Judge.

In this suit to recover on promissory notes, defendants, D.B. Wilkerson, Jr., Thoroughbred Car Company, Thoroughbred Datsun Car Company, and Wilkerson Motor Company, Inc. (Wilkerson), appeal from a summary judgment entered in favor of plaintiff, C.S. Trosper, on his complaint, and entered against them on their counterclaim. We affirm.

In 1980, Trosper sold all outstanding shares of stock in Thoroughbred Datsun

Car Company to Wilkerson. The purchase was financed in part by various promissory notes, executed or guaranteed by defendants. The purchase agreement provided that Trosper would indemnify Wilkerson against "[a]ny and all liabilities ... to the Internal Revenue Service" for fiscal years 1977 through 1980. Wilkerson was required to notify Trosper "promptly" of any "claim or demand upon or the commencement of any action" for which indemnification was sought. The agreement specified that notices under the agreement were to be in writing.

In July 1982, the IRS initiated a taxpayer compliance audit of D.B. Wilkerson, Jr., individually, and various corporate entities which he controlled, including the auto dealership. As part of the audit, the IRS requested backup information to support the use of a LIFO (last in—first out) inventory accounting method. The LIFO accounting election was filed in 1979, during Trosper's ownership of the auto dealership. In October 1984, D.B. Wilkerson, Jr., verbally informed Trosper of the audit and requested LIFO information from him. Trosper's accountant provided all available LIFO documentation to Wilkerson by January 1985, and that information was then forwarded to the IRS.

In July 1985, Trosper sued on the various notes executed or guaranteed by defendants. They answered, denying default on the notes and asserting a counterclaim based on plaintiff's alleged failure to provide tax benefits under the agreement. In December 1985, Wilkerson amended the answer and counterclaim to allege that, in October 1985, it was notified by the IRS that the auto dealership would be assessed a tax deficiency, plus costs, interest, and penalties. The amended pleading alleged that Trosper was required to indemnify Wilkerson for the deficiency under terms of the purchase agreement.

The trial court granted Trosper's motion for summary judgment on the promissory notes. The validity of the notes and the amounts due thereunder were admitted by Wilkerson and are not at issue on appeal. The trial court also granted summary judg-ment for Trosper on Wilkerson's counterclaim, concluding that Wilkerson's failure to provide Trosper with prompt written notice of the tax audit rendered the claim for indemnification unenforceable as a matter of law.

## I.

■ Arguing that the contract is ambiguous, Wilkerson contends that the trial court erred in determining as a matter of law the tax audit was the equivalent of a "claim," "demand," or "action" for which Wilkerson was required to give prompt written notice under the terms of the purchase agreement. We disagree.

■ An indemnity agreement is subject to the same rules of construction which govern contracts generally. *Gardner Brothers & Glenn Construction Co. v. American Surety Co.*, 95 Colo. 456, 37 P.2d 384 (1934). If written notice to an indemnitor concerning an action on the indemnity contract is required by that contract, then, in order for there to be a reasonable opportunity to defend, that notice must be given according to the contract's terms. *See U.S. Wire & Cable Co. v. Ascher Corp.*, 34 N.J. 121, 167 A.2d 633 (1961). *See also Hein Enterprises, Ltd. v. San Francisco Real Estate Investors*, 720 P.2d 975 (Colo.App.1985).

■ An integrated contract, such as the one in this case, is interpreted in its entirety to harmonize and give effect to all its provisions so that none will be rendered meaningless. *See Union Rural Electric Ass'n v. Public Utilities Commission*, 661 P.2d 247 (Colo.1983). Absent a statement of contrary intent in the contract, its terms are enforced according to the plain and generally accepted meaning of its language. *Buckley Bros. Motors, Inc. v. Gran Prix Imports, Inc.*, 633 P.2d 1081 (Colo.1981).

Interpretation of an unambiguous written contract is a question of law for the court. *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (1978). It is only where the terms of an agreement are ambiguous

or are used in some special or technical sense not apparent from the contract itself, that the court may look beyond the four corners of the agreement in order to determine the parties' intended meaning. *Buckley Bros Motors, Inc. v. Gran Prix Imports, Inc., supra; Radiology Professional Corp. v. Trinidad Area Health Ass'n, supra.*

The contract in this case provides in Sec. VII:

"Trosper hereby agrees to indemnify in full and hold harmless Wilkerson and Datsun against, and in respect of: (1) any and all liabilities of Datsun to the Internal Revenue Service or any State Tax Commission or agencies in respect of any tax return filed, or to be filed, by Datsun for Datsun's fiscal years ending 1977, 1978, 1979, and 1980...."

The contract further provides that Wilkerson would notify Trosper:

"*Promptly* upon receipt of notice of any claim or demand upon, or the commencement of any action against, Wilkerson and Datsun in respect of any claim of which indemnity may be sought from Trosper on account of their agreement contained *in this Section VII.* To *notify* Trosper of such claim, demand or the commencement of such action...." (emphasis added)

Requirements for notice under the agreement specified that: "All notices ... hereunder *shall be in writing.*" (emphasis added)

Here, the integrated terms are clear and unambiguous. The stock purchase agreement required Wilkerson to give Trosper prompt written notice of any claim, demand, or action against Wilkerson and Datsun in respect of any claims for which indemnity may be sought. The indemnity was applicable to tax returns filed for four fiscal years.

An audit is the first step in the IRS procedure to assess additional taxes or make adjustments in filed tax returns. Thus, according to its plain and generally accepted meaning, the audit was part of a claim, demand, or action leading to Trosper's potential duty to indemnify Wilkerson. Wilkerson's failure to give prompt written notice to Trosper of the IRS audit rendered the indemnification provisions unenforceable. *See U.S. Wire & Cable Co. v. Ascher Corp., supra. See also Certified Indemnity Co. v. Thun,* 165 Colo. 354, 439 P.2d 28 (1968).

II.

■ Wilkerson also contends that the trial court erred in awarding attorney fees and abused its discretion in assessing costs relative to plaintiff's recovery on the promissory notes. We disagree.

All of the notes provide that, in the event of default, the holder would be entitled to recover the costs of collection and reasonable attorney fees. Plaintiff here made a sufficient showing that the attorney fees awarded by the trial court were paid or incurred by him and were reasonable. *See Rock Wool Insulating Co. v. Huston,* 141 Colo. 13, 346 P.2d 576 (1959); *Sherman v. Sprentall,* 709 P.2d 602 (Colo.App.1985).

■ The awarding of costs is within the trial court's discretion. *See Rosmiller v. Romero,* 625 P.2d 1029 (Colo.1981). It is the burden of the party asserting error in a judgment to present a record disclosing that error. A judgment is presumed to be correct until the contrary is affirmatively shown. *Schuster v. Zwicker,* 659 P.2d 687 (Colo.1983); *Laessig v. May D & F,* 157 Colo. 260, 402 P.2d 183 (1965). From the limited record, which fails to include the bill of costs, we conclude that there was no abuse of discretion.

Given our disposition of this appeal, we need not address the propriety of the trial court's alternate basis for dismissal of Wilkerson's counterclaim.

JUDGMENT AFFIRMED.

HUME and NEY, JJ., concur.