**SUBURBAN NATIONAL BANK, Appellant,**

v.

**TRANSAMERICA INSURANCE COMPANY, Respondent.**

**No. C2-88-2155.**

Court of Appeals of Minnesota.

April 4, 1989.

**120**

George C. Hoff, Hoff & Allen, Eden Prairie, for appellant.

R.D. Blanchard, Galen L. Bruer, Thomas N. Crouch, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp, & Brennan, Minneapolis, for respondent.

Heard, considered and decided by PARKER, P.J., and SCHUMACHER and SCHULTZ,* JJ.

## OPINION

SCHUMACHER, Judge.

Appellant bank, a link in a credit card financing program administered by Norwest Card Services, brought a breach of contract action against respondent insurance company. Appellant alleged that respondent wrongfully denied appellant's claim under a banker's bond issued by respondent for losses appellant incurred through a customer's deposit of invalid credit card sales slips. Appellant's summary judgment motion was denied and the trial court dismissed appellant's claim. The bank appeals from the judgment entered in favor of respondent.

## FACTS

Appellant, Suburban National Bank (SNB) of Eden Prairie, Minnesota, is a member of a VISA/MASTERCARD credit card program administered by Norwest Card Services. SNB and Northwestern

National Bank of Minneapolis (Northwestern) entered into an agreement, dated May 1, 1980, whereby SNB became an agent exclusively for Northwestern National Bank, the principal.

SNB's role in the process is to encourage merchants to join the program and accept VISA/MASTERCARD. SNB does so by entering into Merchant Agreements provided by Northwestern. Member merchants bring sales slips from their credit card customers to SNB. Under the Merchant Agreement, SNB "shall accept all sales slips arising out of Merchant's card transactions." SNB then credits the face amount of the sales slips to the merchant's account. SNB forwards the merchants' sales slips daily to Northwestern. Through the May 1, 1980, agreement, SNB agreed to maintain a checking account with Northwestern. Upon receipt of the merchants' sales slips, Northwestern credits SNB's account for the face amount of the sales slips. SNB receives a fee for its service from the merchants, who pay a sum equal to a percentage of the monthly sales.

The present case involves one of SNB's merchants, Eden Travel, Inc. (Travel). The president of Travel, Joseph Aickareth, entered into a Merchant Agreement with SNB on February 5, 1986. Aickareth regularly deposited sales slips and made withdrawals the next day.

In late 1986, Aickareth deposited sales slips that were unauthorized or were authorized but represented payment for stolen or unissued airline tickets. Aickareth withdrew money from Travel's account shortly after he deposited the sales slips.

Initially, no one at SNB questioned Aickareth's actions. However, bank personnel became suspicious when they noticed several substantial withdrawals within a brief period. Aickareth's fraud was eventually discovered, but by that time he had fled the United States.

SNB sought to recoup its losses through the Banker's Blanket Bond issued by respondent, Transamerica Insurance Compa-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

ny (Transamerica). On May 19, 1987, SNB filed a Proof of Loss claim with Transamerica. On June 22, 1987, Transamerica denied SNB's claim, stating that SNB's recovery was barred by two exclusions in the bond.

On August 20, 1987, SNB initiated a lawsuit against Transamerica, alleging breach of contract. SNB's summary judgment motion was denied and the trial court dismissed SNB's action. Judgment for Transamerica was entered on September 22, 1988 and SNB appeals therefrom.

## ISSUE

Does Travel's deposit of fraudulent sales slips evidencing fictitious credit card sales into its account with SNB and Travel's subsequent withdrawal from that account constitute a loss resulting from a purchase under exclusion (e) of SNB's Banker's Bond?

## ANALYSIS

On appeal from summary judgment in favor of Transamerica, this court must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). In interpreting a provision of a contract, the court must give the terms "their plain, ordinary and popular meaning." *Columbia Heights Motors, Inc. v. Allstate Insurance Co.*, 275 N.W.2d 32, 34 (Minn.1979) (quoting *Ostendorf v. Arrow Insurance Co.*, 288 Minn. 491, 495, 182 N.W.2d 190, 192 (1970)).

The construction of a contract is a question of law. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn.1979). This court is not bound by the trial court's conclusions of law. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn. 1977).

The Banker's Bond issued by Transamerica insures SNB in six general situations: instances of employee fraud, loss of property on SNB's premises, loss of property in transit, loss through forgery or alteration, certain losses associated with securities, and losses resulting from counterfeit money.

SNB filed its claim with Transamerica under Insuring Agreement paragraph (B), governing loss of property on SNB's premises. Insuring Agreement paragraph (B) reads in pertinent part:

## (B) ON PREMISES

1) loss of property resulting from

\*     \*     \*     \*     \*     \*

(b) theft, false pretenses, common law or statutory larceny, committed by a person present in an office or on the premises of the insured, while the property is lodged or deposited within the offices or premises located anywhere.

SNB contends that the trial court erred by finding that its recovery under the bond is barred by exclusion (e). The exclusion reads as follows:

Section 2. This bond does not cover * * * (e) loss resulting directly or indirectly from the complete or partial amount of payment of, or default upon, any loan or transaction in the nature of a loan or extension of credit, whether involving the insured as a lender or as a borrower, including the purchase, discounting or other acquisition of false or genuine accounts, invoices, notes, agreements or Evidences of Debt, whether such loan or transaction was procured in good faith or through trick, artifice, fraud or false pretenses, except when covered under insuring agreements (A), (D) or (E);

SNB purchased sales slips from Travel through the discounting mechanism. The trial court found that

Because SNB 'purchased' VISA and MASTERCARD charge slips through its merchant agreement with Eden Travel, any resulting loss from the purchase of any account, invoice, note or agreement is within the exclusion provision.

We agree with the trial court's finding that the purchase of the sales slip was barred from coverage by exclusion (e). The May 1, 1980 agreement between SNB and Northwest provides that "[a]ll transactions * * * resulting in charges to cardholders *shall create the relationship of debtor and creditor* between the cardholder and [Northwest]." (Emphasis added)

The sales slips were evidence of credit *agreements* between the purchaser and Northwest and therefore are within exclusion (e).

Furthermore, as an alternate ground for affirming the summary judgment, we hold that the sales slips were "Evidences of Debt" under exclusion (e). *See* Black's Law Dictionary 499 (Fifth ed. 1979). ("evidence of debt" is a term applied to instruments which facially evidence the existence of a debt.) An "instrument" includes "any * * * writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment." Minn.Stat. § 336.9–105(1)(i) (1988). In the present case, the sales slips evidence money owed by purchasers to Northwest.

## DECISION

The trial court's denial of summary judgment and dismissal of appellant's claim is affirmed.

Affirmed.