**OMNIBANK PARKER ROAD, N.A., Plaintiff–Appellant,**

v.

**EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company, Defendant–Appellee.**

No. 91–1242.

United States Court of Appeals, Tenth Circuit.

April 21, 1992.

James V. Pearson, Lannie Y. Iwasaki, and Brian D. Milligan, of Iwasaki & Pearson, Denver, Colo., for plaintiff-appellant.

Bruce F. Fest and Dennis A. Hanson of Wood, Ris & Hames, Denver, Colo., and Charles D. Thomas and Dirk E. Ehlers of Peterson & Ross, Chicago, Ill., for defendant-appellee.

Before SEYMOUR and ANDERSON, Circuit Judges, and SAM,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

In this diversity case, Plaintiff claims coverage under a Bankers Special Bond (Bond) issued by Defendant for losses sustained when credit card sales drafts deposited by Plaintiff's merchant customer proved to be uncollectible. The district court determined that the Bond excluded coverage for the loss and granted summary judgment for Defendant. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.[1]

Plaintiff had agreed to process credit card payments for its merchant customer, E–Z Rest Adjustable Beds (E–Z Rest). Plaintiff credited immediately the amount of the credit card sales draft to E–Z Rest's account and permitted E–Z Rest to withdraw those amounts without delay. Plaintiff then submitted the credit card sales drafts to the Rocky Mountain Bankcard System (RMBCS) for payment. Without Plaintiff's knowledge, E–Z Rest's representatives obtained and deposited credit card sales drafts for beds that were not delivered. As a result, E–Z Rest's customers exercised their right to charge back the amounts for the undelivered beds, RMBCS debited Plaintiff's account for those chargebacks, and Plaintiff in turn debited E–Z Rest's account, causing an overdraft in E–Z Rest's account at Plaintiff bank. Plaintiff then sought payment from Defendant under the Bond.

The Bond provides coverage for various losses, so long as the losses are not excluded. The Bond does not cover

(e) loss resulting directly or indirectly from the complete or partial nonpayment of or default upon

(1) any loan, or any transaction in the nature of a loan, or extension of credit, whether or not involving the Insured as a lender or borrower, or

(2) any false or genuine note, account, agreement, invoice or other evidence of debt assigned or sold to, discounted or otherwise acquired by the Insured,

whether the Insured's participation was procured in good faith or through trick,

---

* Honorable David Sam, District Judge, United States District Court for the District of Utah, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

artifice, fraud or false pretense, except to the extent that coverage for such loss is afforded under Coverage 1, 11 or 12.... [2]

Bond at 16. Therefore, a loss is excluded from coverage if it is (1) caused by a nonpayment or default, (2) an agreement or evidence of debt, and (3) discounted or otherwise acquired by Plaintiff. Plaintiff denies the applicability of each of those provisions.

 "We review the district court's grant of summary judgment de novo." *Oestman v. National Farmers Union Ins. Co.*, 958 F.2d 303, 304 (10th Cir.1992). The parties agree that Colorado substantive law applies. An indemnity contract is to be construed pursuant to the general rules for construction of contracts. *Trosper v. Wilkerson*, 764 P.2d 375, 376 (Colo.Ct.App. 1988). Absent a statement of contrary intent in the contract, its words are to be given their plain and ordinary meaning. *Id.* An indemnity contract "is not to be extended by construction to bring within its scope things other than those therein expressed, merely because the judicial mind may think that they, equally with those included, ought to have been provided for." *Gardner Bros. & Glenn Constr. Co. v. American Surety Co.*, 95 Colo. 456, 37 P.2d 384, 386 (1934). Unambiguous contract provisions must be construed to give effect to their plain meaning, while ambiguous provisions are to be construed against the drafter and in favor of providing coverage. *See American Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo.1991) (construction of insurance contract). Exclusionary clauses must be clear and specific. *Id.* The burden is on the insurer to establish that the exclusion applies and that the exclusion is not subject to any other reasonable interpretations. *Id.*

 Plaintiff asserts that the language of Exclusion (e), "loss resulting directly or indirectly from the complete or partial nonpayment of or default" does not apply to this situation because there is no evidence that the credit card holders who ordered the beds failed to pay their credit card bills. Plaintiff argues that a chargeback is un-

related to a purchaser's payment or default on his or her credit card obligation. We disagree. We conclude that Plaintiff's loss resulted from the credit card holders' nonpayment of the credit card sales drafts, as contemplated by Exclusion (e).

 Plaintiff next asserts that the credit card drafts were not "agreements" or "evidence of debt," so were not excluded from coverage by the Bond. Plaintiff maintains that because the term "draft" is used to describe the piece of paper on which the credit card transaction was recorded, the "draft" is an order to pay, rather than a promise to pay. Plaintiff does not dispute the language in the RMBCS Agreement that a credit card sales draft "represent[s] [a] bona fide obligation[ ] of a Charge Card holder ... for the purchase price of merchandise sold." Appellee's Supplemental App. at AS–12, paragraph 6. We determine that the credit card sales drafts are "agreements" and "evidences of debt," as set forth in Exclusion (e). *See Suburban Nat'l Bank v. Transamerica Ins. Co.*, 438 N.W.2d 119, 122 (Minn.Ct.App.1989) (credit card sales slips were evidence of credit agreements and evidence of debt).

Plaintiff maintains that a credit card sales draft differs from a loan, noting that the making of loans is part of a bank's business risk. But permitting E–Z Rest to withdraw funds before those funds were unconditionally received by Plaintiff bank is also a business risk undertaken by Plaintiff, not covered by the Bond. By crediting the sales drafts to E–Z Rest's account and allowing immediate withdrawal of those funds, Plaintiff "certainly set in motion the chain of events which resulted in the loss." *See Mitsui Mfrs. Bank v. Federal Ins. Co.*, 795 F.2d 827, 831 (9th Cir.1986).

 Plaintiff's final argument against application of Exclusion (e) is that the credit card sales drafts were not "discounted" by Plaintiff. According to Plaintiff, it received a monthly fee for processing the credit card sales drafts, but not a percentage for the purchase and sale of an asset, as would be the case in a discounting situation. Pursuant to the RMBCS Merchant Agreement, however, Plaintiff received a

**2.** The parties agree that coverage is not afforded under Coverage 1, 11, or 12.

*percentage* of each sales draft, not a set fee per item of paper such as a service charge. *See* Appellee's Supplemental App. at AS–12, paragraph 7. If the credit card holder returned the item and received a credit, Plaintiff received no fee for the transaction. *Id.* at paragraph 6. Furthermore, the RMBCS Merchant Agreement states that the amount to be paid to Plaintiff "shall constitute the *'merchant discount,'*" and "upon receipt of any . . . credit voucher, [RMBCS or Plaintiff] will refund to Member the applicable *discount fee.*" *Id.* at paragraphs 7, 6 (emphasis added). We conclude that the credit card sales drafts were "discounted" by Plaintiff, and that Exclusion (e) excludes coverage for Plaintiff's loss.

Because we determine that coverage for Plaintiff's loss was excluded by Exclusion (e), we do not address the arguments presented regarding the applicability of Exclusion (f).

The judgment of the United States District Court for the District of Colorado is AFFIRMED.