Morgan, J.
Jewel had judgment in his action against Stearns to recover damages for breach of covenants in a conveyance of land. Stearns assigns error to the order overruling his demurrer to the complaint, to the order sustaining a de *391 murrer to his answer, and to the entry of judgment against him, which will be considered in the above order.
First, the plaintiff alleged that the defendant gave him a warranty deed, setting out a copy of it, conveying some Nebraska land, with the following covenants:
“And we do hereby covenant with the said grantee, and with his heirs and assigns forever, that we are lawfully seized of said premises; that they are free from incumbrances except taxes for the year 1911 and thereafter; that we have good right and lawful authority to sell the same; and we do hereby covenant to warrant and defend the title to said premises against the lawful' claims of all persons whomsoever.”
That when the deed was given, Humphrey Smith was, and that defendant knew it, in actual, adverse possession of 20 acres of the land, and had it fenced. That as soon as he learned, which was about one year after the deed was given, that Smith was in possession, he demanded possession of him, which was refused, and that he then requested the defendant to dispossess Smith, and deliver possession to him, which the defendant refused to do. That plaintiff then sued Smith and recovered the possession. That by reason of the breach of the covenants aforesaid the defendant became indebted to him for his expenses in said suit against Smith, stating the amount.
It is contended that the deed does not contain any covenant of possession, and contains no warranty against unlawful claims. It seems unnecessary to consider the contention that the deed contains no warranty against unlawful claims, as the plain language of the covenant of warranty is to defend “against the lawful claims of all persons whomsoever.” The contention in the briefs, both upon the demurrer to the complaint and the demurrer to the answer, arises upon the meaning of the words “lawfully seized.” These words, like “livery of seisin,” do not mean anything in this age, other than what they have been construed to *392 mean by judicial decisions, and as defined by text writers. It is unfortunate that they are now used in a deed at all. There is not one seller or purchaser of land in a dozen who knows what a covenant of seisin is. Such words as seisin, fee simple, hereditaments, indenture, these presents, indefeasible estate of inheritance, and other ancient terms have long since outlived their usefulness in conveyancing, and by legislation should be displaced by modern substitutes that disclose a meaning to the ordinary business man. Common understanding between a seller and buyer of anything would lead the purchaser to believe that the seller could and would deliver, not merely the right to the thing sold, but the thing itself. When a man buys a thin’g he does not anticipate that he will have to sue for the possession of it. However, the seller and buyer of this land put their agreement into a deed containing certain covenants, one of which is that the seller was “lawfully seized” of the premises conveyed, and, under the law, they are bound by the terms used. If the deed had stated that the grantor had good title and could and would deliver to the grantee the actual possession, or its equivalent, it would have expressed a proper understanding, unless the seller did not intend to covenant to that extent.
Deeds usually contain covenants, concerning seisin, good right to convey, quiet enjoyment, against incumbrances, followed by a general warranty. The deed under consideration contained no other covenants than the above quotation from it, but it is believed that it contains, under a proper construction, all of the usual covenants, only one of which, however, if any, was broken; that is, according to the allegations of the complaint, and that is the covenant of seisin. The. authorities are all to the effect that “lawfully seized” includes right to convey, and none of them go quite so far as to say that the idea of possession, actual or constructive, is eliminated. So, with no other covenant of possession, the term “lawfully seized,” as used in the deed *393 herein, ought to be construed to include it. “Livery of seisin” at common law, from which term the word “seisin” iñ our deeds is unquestionably derived, meant delivery of actual possession; and to divorce the word “seisin” from all idea of possession, as contended for, would be contrary to ordinary legal rules of construction. Webster defines “seisin” by the one word, “possession.” The authorities distinguish between seisin in deed or in fact, which they call actual possession, and seisin in law, which they define as the right to immediate possession. In Jenkins v. Fahey, 11 Hun., 351, it is said that seisin at common law signifies possession. In the case of North. Pac. R. R. v. Cannon (C. C.), 46 Fed., 222, 232, it is said that seisin means possession. The word seisin, under the authorities, includes also the covenant of “right to convey,” but as this deed contains a separate covenant of the right to convey, it seems plausible that the words “lawfully seized” were intended to refer to possession alone.
Devlin on Deeds (3rd Ed.), sec. 889, says:
“Unless there is some statutory regulation to the contrary, 'the rule is that a covenant of seisin, where the grantor has no possession, either actual or constructive, is broken as soon as made.”
This text is supported by decisions disclosing the weight of authority of the present day, among which is the case of Hayden v. Patterson, 39 Colo., 15, 18, 88 Pac., 437, in which it is said:
“Where a grantor conveys land to which he has no title, particularly if he is out of possession, his covenants of seisin and right to convey are broken as soon as made.’’
The same was held in Adams v. Schiffer, 11 Colo., 15, 36, 17 Pac., 21, 7 Am. St., 202. There it is said:
“The covenant of right to convey amounts to a covenant of seisin; they are synonymous. The principles and practice applicable to the one apply to the other. 3 Washb. Real Prop., 448; Will. Real Est., 415; Rickert v. Snyder, *394 9 Wend., 421. There was no breach of this covenant, as, at the time of the conveyance, Adams was in possession of the property conveyed, and had a right to convey, within the meaning of the covenant. 3 Washb. Real Prop., 449.”
The same was held in a later case, Seyfried v. Knoblauch, 44 Colo., 86, 90, 96 Pac., 993.
In the case of Allen v. Allen, 48 Minn., 462, 51 N. W., 473, the court said:
“A covenant of seisin is broken if the covenantor has not the possession, the right of possession and the complete legal title.”
The above language is taken from the case of Fitzhugh v. Croghan, 2 J. J. Marsh. (Ky.), 429, 19 Am. Dec., 139, cited in Rawle on Covenants for Title, p. 58.
In the case of Pierce v. Johnson, 4 Vt., 247, the court said:
“That the covenant of seisin is satisfied by possession without title, cannot be well reconciled to sound reason, except when applied to the naked covenant of seisin without any words that imply any other right but mere possession.”
It follows, therefore, that as Smith was in the actual adverse possession of part of the land when the deed was made, as distinctly alleged in the complaint, the defendant could not have been in either the actual or constructive possession thereof, and the covenant of seisin was broken as soon as the deed was made, and the demurrer was properly overruled.
Second, the answer discloses a different state of facts. It stated that Smith was not in the adverse possession, of the 20 acres, disclosing that the covenant of seisin was not broken, as appears from the allegation of the complaint, and stated a cause of defense, and an issue was thus made as to what kind of possession Smith held when the deed was made. The answer sets forth a state of facts showing that Smith was hot in the adverse possession claiming absolute ownership of the 20 acres, but was in the conditional pos *395 session thereof, believing it was a part of his own land, with no intention to claim it as his own; if theboundary line between him and the plaintiff’s land was at a different place from where he thought it was. If the legal title of the covenantor drew to it the constructive possession, as in the case of vacant and unoccupied lands, then the covenant of seisin, according to the answer, was not broken, and it was error to sustain the demurrer, and for this reason the case must be reversed.
It may seem, on first impression, that the legal title does not draw to it the constructive possession of land which is in the actual possession of another, and that this is true only in case of vacant and unoccupied land; but it conclusively appears from the authorities that this is true even as to land occupied by another, if such occupation is such as that described in the answer.
It is said in the case of Slater v. Ralston, 6 Metc., 439, 444:
“If there is a tortious possession, not amounting to a seisin, the constructive possession as between the tortfeasor and the party having the legal title is considered as continuing in him who has the right.”
It is said in Ft. Dearborn Lodge v. Klein et al., 115 Ill., 177, 183, 3 N. E., 292, 56 Am. Rep., 133, that:
“We desire to emphasize the statement that mere occupancy does not constitute seisin in the legal sense of that term, even in the case of a tortious or unlawful seisin. One may be in the occupancy of land as a mere squatter without any pretense' of claim, when, in contemplation of law, even the possession is in another. * * * It will, however, be sufficiently accurate for the purposes of the present discussion to define possession in the connection indicated, to be that position or relation which one occupies with respect to a particular piece of land which gives to him its use and control, and excludes all others from a like use or control. * *. * Seisin, then, in a legal sense, means pos *396 session with the intention of asserting a claim to a freehold estate in the premises added.”
Applying the same law as contained, in the authorities cited under the first contention, that the covenant of seisin contains not only possession, but title, and considering the allegations of the answer as proved, Smith was not seised of the 20 acres as to the true owner, his possession did not amount to a disseisin; therefore Steams, 'before conveying, and Jewel, thereafter, was seised of the 20 acres. Accord ing to the Slater case, supra, Smith was seized as to all the world, except as to the true owner. In other words, unless the possessor of the land holds adversely to the true owner, the legal or constructive possession is in the true owner; and, as Devlin says, if the actual or constructive possession was in the grantor at the time of the conveyance, the covenant of seisin is not broken.
It is stated in 1 Cyc., 1037:
“According to the great weight of authority, where the occupation of the land is by a mere mistake, and with no intention on the part of the occupant to claim as his own, land which does not belong to him, but he intends to claim only to the true line wherever it may be, the holding is not adverse.”
In Grube v. Wells, 34 Ia., 148, it is said:
“An essential ingredient of adverse possession is a elaim of right hostile to the true owner. So if one enter upon the land of another, without any color of title, or claim of right, the possession thus acquired is not adverse, but the possessor will be deemed by the law to hold under the legal owner. In such case no length of possession will make it adverse.”
In Worcester v. Lord, 56 Maine, 266, 96 Am. Dec., 456, the court said:
“To make a disseizin in fact there must be an intention on the part of the party assuming possession to assert title in himself.” .....
*397 In Preble v. Maine Central R. R. Co., 85 Me., 260, 27 Atl., 149, 35 Am. St., 366, 26 L. R. A., 829, 834, it is said:
“If, on the other hand, a party, through ignorance, inadvertence, or mistake, occupies up to a given fence beyond his actual boundary, because he believes it to be the true line, but has no intention to claim title to that extent if it should be ascertained that the fence was on his neighbor’s land, an indispensable element of adverse possession is wanting. In such a case the intent to claim title exists only upon the condition that the fence is.on the true line. The intention is not absolute, but provisional, and the possession is not adverse.”
In Schad v. Sharp, 95 Mo., 573, 578, 8 S. W., 549, the court said:
“It is the well settled law in this state that when two adjoining proprietors are divided by a fence which they suppose to be the true line, each claiming only to the true line, they are not bound by the supposed line, but must conform to the true line when ascertained. Jacobs v. Mosely, 91 Mo., 118; Thomas v. Babb., 45 Mo., 384. ‘Their possession under mistake or ignorance of the true line dividing their premises, and without intending to claim beyond the true line when discovered, will not work a disseisin in favor of either party.’ Houx v. Batton, 68 Mo., 84; St. Louis University v. McCune, 28 Mo., 451.”
The case of Grube v. Wells, supra, has been followed in a number of later Iowa cases cited in the latest case of Griffin v. Brown, 149 N. W., 833.
The weight of authority is in accordance with the Iowa cases, and the same principle has been announced in this state. In the case of Evans v. Welch, 29 Colo., 350, 363, 68 Pac., 776, it is said:
“Defendants recognize the rule that the ownership of the fee draws to it a constructive possession, and that such constructive possession continues until it is destroyed by an actual adverse possession.”-
*398 It is said in Beaver Brook Co. v. St. Vrain Co., 6 Colo. App., 130, 134, 40 Pac. 1066, although on a reverse state of facts, that:
“If the intention was to show constructive possession by reason of title, there was a misconception of the law of the case. The rule of law is well settled that there can be no constructive possession by virtue of title when there is an actual adverse holding(Italics mine.)
If it be supposed that Smith had sued Jewel for the possession of the 20 acres, and had recovered, under the usual rule, Stearns would have been liable to Jewel; but under the answer, such recovery would have shown that the fence was in the right place, and that' Smith had never claimed any of the land conveyed. So it appears that the only issue, between the parties in the suit between Jewel and Smith, was the location of the boundary line, although the suit was in ejectment.
It seems clear that if a grantor be in the actual or constructive possession of land, his covenant of seisin is not broken by the mere fact that another is in possession, unless such possession is antagonistic and adverse. The answer stated facts sufficient to show that the possession of Smith was not antagonistic or adverse to Steams, at the time the deed was made, and hence the covenant of seisin was not broken, if the facts so stated are true, which must be determined by a trial.
The refusal to deliver possession to Jewel by Smith, which is admitted in the answer, took place one year after the deed was made, and even if such refusal could be considered as evidence of an adverse possession, it would be too late to come within the covenant of seisin, but would possibly come within the covenant of quiet enjoyment, or warranty, provided the refusal was based upon a claim of ownership and not upon uncertainty as to the dividing line. The adverse holding in order to constitute such a possession as would effect a breach of the covenant of seisin, must be a *399 possession held at the time the deed is made. This is illustrated in the case of Gay v. Mitchell, 35 Ga., 139, 141, 89 Am. Dec., 278, where it is said:
“Possession that in its commencement is not adverse becomes so only when the holder changes his mind-or intends it to become adverse, and there is united with such change an intent and knowledge thereof on the part of the True owner.”
However, this refusal on the part of Smith would not even come within the covenant of warranty, because it was not an unlawful claim, as shown by the judgment set forth in the complaint. The warranty was against lawful claims 'mly.
On another trial the plaintiff may deny the statements of the answer as- to the kind of possession, whether adverse or not, or the court may consider the issue sufficiently drawn by the complaint and answer, and such issue of fact may be determined; and it seems the burden of proof would be upon the plaintiff, Evans v. Welch, supra; Upham v. Weisshaar, 23 Colo. App., 277, 280, 128 Pac., 1129.
There is another issue formed by the pleadings which furnishes another reason why it was error to sustain the demurrer to the answer — the issue as to the expenses. Plaintiff alleged that he had expended a certain sum of money in the lawsuit ejecting Smith, and defendant denied it; and if the court or jury should find the facts as to Smith’s possession as alleged in the complaint, the issue as to the expenses, especially the amount thereof, would have to be determined; if the court or jury should find the possession of Smith was as alleged in the annwer, the expenses would then become immaterial, and judgment would go for the defendant.
The judgment is therefore reversed, with' directions to overrule the demurrer to the answer, and for further proceedings in accordance with this opinion.