804 P.2d 1069 (1991)
111 N.M. 250
Mary Lou BLOOM and Kenneth D. Bloom, her husband, and Harry J. Schofield and Carol Schofield, his wife, Plaintiffs-Appellants,
v.
James C. HENDRICKS and Constance Hendricks, his wife, James C. Hendricks, Jr. and Rebecca L. Hendricks, his wife, Debra Hendricks Larowe and Keith Larowe, her husband, and James Hendricks, Personal Representative of the Estate of P.B. Hendricks and Frances Hendricks, Defendants-Appellees.
No. 18910.
Supreme Court of New Mexico.
January 14, 1991.
*1070 Civerolo, Hansen & Wolf, Peter V. Domenici, Jr., Albuquerque, for plaintiffs-appellants.
S. Thomas Overstreet, Alamogordo, for defendants-appellees.

OPINION
RANSOM, Justice.
The grantees of a tract of land sued the grantors for breach of warranty covenants to appear and defend fee simple title against "the lawful claims and demands of all persons." Plaintiffs also claimed the grantors made collateral negligent misrepresentations that the use of a certain roadway by adjacent property owners was permissive and would cease upon request. As discussed below, we do not deem the misrepresentation claim to be an issue. We *1071 consider only the circumstances under which the grantors, under a general warranty deed, are responsible for the attorney fees expended by the grantee in a successful defense of the title conveyed.
On rationale we develop in this opinion that identifies the party who has assumed the risk of mounting or declining to mount a defense, we decide that when the grantor neither bears responsibility for the substance of an adverse claim nor had actual or constructive knowledge of a potential adverse claim when he made the conveyance, the grantee can recover the costs of a defense against that claim only when he first made a demand on the grantor to appear and defend and the grantee's own defense of the title was unsuccessful. Alternatively, when the grantor bears some responsibility for the substance of an adverse claim or had actual or constructive knowledge of a potential adverse claim when he warranted his title and agreed to defend it, the grantee can recover the costs of a defense, including reasonable attorney fees, except when the grantee made no demand on the grantor to appear and defend and the grantee's own defense of the tide was unsuccessful.
The complaint in this case was filed by Mary and Kenneth Bloom, purchasers of a forty-acre tract of land in Otero County, New Mexico. The Blooms purchased the property in 1981 and obtained from the sellers a warranty deed to the tract. The first group of defendants are P.B. and Constance Hendricks, who were the remote grantors of the tract. In 1976 they conveyed the tract by warranty deed to their children and their children's spouses. The children and their spouses are the second group of defendants and are the immediate grantors who gave the warranty deed to the Blooms in 1981.
At the time they purchased the property the Blooms were concerned over the neighbors' use of a portion of the tract. Apparently, P.B. Hendricks had an oral agreement with the neighbors, Rex and Gracie Lane, that they were free to use part of the tract for equipment storage and access to their home until such time as Hendricks might dispose of the property. The Blooms stated they received assurances from both the immediate and remote grantors that the neighbors' use was permissive and would cease upon request.
In 1985 the Blooms wrote to the Lanes revoking permission for their use of the tract. The Lanes responded through counsel and claimed fee title to a portion of the tract under several theories. The parties were unable to resolve the dispute, and the Lanes filed suit in September 1985 claiming fee title by virtue of a boundary by acquiescence and, alternatively, claiming a prescriptive easement.
The Lanes' claim to a boundary by acquiescence relied in large part upon an affidavit signed by P.B. Hendricks in August 1985. The affidavit stated:
At the time the Lanes purchased their property and for many years thereafter, I was unaware of the exact location of the North boundary of their property and South boundary of my property because I had never had my property surveyed. * * * In the vicinity of the northern boundary of the Lanes' property is an arroyo running roughly east and west. For many years, the Lanes and I recognized and treated this arroyo as the northern boundary of their tract and the southern boundary of the property which I owned.
From a point fifty to 100 feet north of the southwest corner, the arroyo referred to in the affidavit ran east by northeast in the area at issue and then due northeast to the far northeast corner of the forty-acre tract conveyed by warranty deed to the Blooms. Ken Bloom testified that when he learned of the affidavit he went directly to Jimmy Hendricks, one of the immediate grantors, to discuss the situation and to request that something be done about the affidavit his father had signed. Bloom stated that the general impression he received from Hendricks was that the matter was not his problem.
In a bench trial the court ruled in favor of the Lanes in their suit against Blooms. The court quieted title to 1.474 acres of the tract in the Lanes and evicted the Blooms *1072 from the property. The decision was appealed to the New Mexico Court of Appeals which, in Lane v. Bloom, Ct.App. No. 9266 (filed Oct. 16, 1987), reversed the trial court's decision. The court of appeals quieted title to the forty-acre tract in the Blooms except for a prescriptive easement across 0.302 acres used as a roadway and parking area by the Lanes.
Misrepresentations not an issue. In Lane v. Bloom the order of the court of appeals for the entry of a judgment on remand regarding the prescriptive easement was based on an unchallenged finding of the trial court concerning the purported easement that lay within the 1.474 acres. On appeal, the Blooms addressed only the boundary and title question. When the court of appeals reversed on the title question it stated that because "the parties do not dispute that plaintiff established a prescriptive easement over the 0.302 acre tract," the trial court would enter such a judgment in favor of the Lanes on remand. The complete trial court findings of fact have not been made available in this appeal.
In the instant case, at oral argument and their reply brief, the Blooms have maintained that the Lanes did not have a claim for a prescriptive easement in 1981. They concede that until 1981 the use by the Lanes was permissive and according to the terms of the acknowledged longstanding agreement with P.B. Hendricks. The statement about no claim existing in 1981 is made by the Blooms to rebut the charge that they should have been aware of the Lanes' adverse use of the property in 1981, and that for that reason the negligent misrepresentation claim is barred by the four-year statute of limitations. Counsel for the Hendricks states at several points that the Blooms "were advised of the Lanes' interest" in the tract shortly after the Blooms made the purchase.[1] In reply, the Blooms state they had no awareness whatsoever of any of the Lanes' claims until 1985 when they first saw the affidavit signed by P.B. Hendricks and, shortly thereafter, received a demand letter from the Lanes' attorney raising directly the various claims of the Lanes. Since neither claim nor issue preclusion applies to Hendricks on the resolution of the prescriptive easement question decided in Lane v. Bloom,[2]" we are compelled by the Blooms' concession in this case to hold there was no ten-year prescriptive easement in 1985, see Hester v. Sawyers, 41 N.M. 497, 71 P.2d 646 (1937) (prescriptive easement is acquired when the use is open, uninterrupted, peaceable, notorious, adverse, under a claim of right, and continuous for a period of ten years), and no misrepresentation when Hendricks said the use by the Lanes of the 0.302 acre roadway area was permissive and would cease upon request.
Warranty covenants. In the suit now before us the Blooms seek reimbursement from both their remote and immediate grantors for the cost of defending against the Lanes' adverse title claim to the 1.474 acres at the trial and appellate levels, approximately $15,532.49. The parties filed cross motions for summary judgment and the trial court granted judgment in favor of the Hendricks. For the reasons stated above in connection with the claim of negligent misrepresentation, we decide only the issue of warranty covenants to defend fee simple title to the 1.474 acres.
The deeds from both the immediate and remote grantors were prepared on standard general warranty deed forms that included "warranty covenants" with the *1073 conveyance. Pursuant to NMSA 1978, Section 47-1-37 (Orig.Pamp.), the words "warranty covenants" in a conveyance of real estate have the following meaning and effect:
the grantor for himself, his heirs, executors, administrators and successors, covenants with the grantee, his heirs, successors and assigns, that he is lawfully seized in fee simple of the granted premises; * * * and that he will, and his heirs, executors, administrators and successors shall warrant and defend the same to the grantee and his heirs, successors and assigns forever against the lawful claims and demands of all persons. [Emphasis added.]
This affirmative general warranty covenant runs with the land in favor of remote grantees and may be enforced against the immediate grantors, the remote grantors, or both. Beecher v. Tinnin, 26 N.M. 59, 189 P. 44 (1920).
Adverse title suit under doctrine of acquiescence implicates warranty covenant regardless of open and obvious encroachment. The parties have argued at some length over how the outcome of this case should be affected by our decision in Tabet Lumber Co. v. Golightly, 80 N.M. 442, 457 P.2d 374 (1969) (open and obvious prescriptive easement does not breach warranty deed, covenant against encumbrances). First, it is important to recognize that the suit brought by the Lanes involved both easement and title questions. Under Tabet Lumber, the Blooms could not recover damages for a prescriptive easement that was open and obvious at the time the land was conveyed to them in 1981. However, we see no reason to extend the rule announced in Tabet Lumber to a partial failure of title arising out of a boundary by acquiescence. Unlike a prescriptive easement, the claim of a boundary by acquiescence infringes on the title itself. The general effect of a warranty covenant is that the grantor agrees to compensate the grantee for any loss suffered by reason of the failure of title which the deed purports to convey. 6A R. Powell, The Law of Real Property ¶ 900[2][d] (1990). While the grantors are correct in their contention that there is no breach of the covenants of title by an open and obvious prescriptive easement, the converse is true if a subsequent suit to establish a boundary by acquiescence shows that the grantor passed title to only part of the real estate.
Moreover, there is an important difference between a suit to establish a prescriptive easement and one to establish a boundary by acquiescence, suggesting that the two claims should be treated differently. Part of the rationale expressed for excepting open and obvious prescriptive easements from the warranty deed covenant against encumbrances is that the condition was apparent upon inspection of the real estate. Thus, it could be presumed that any injury to the purchaser was within the contemplation of the parties and was taken into consideration in the purchase price. Tabet Lumber, 80 N.M. at 443, 457 P.2d at 375. In contrast, the factors necessary to establish a boundary by acquiescence are not necessarily apparent upon mere inspection of land. A claimant must show the mutual recognition and acceptance of a clear and certain dividing line as the boundary between adjacent properties. Tresemer v. Albuquerque Pub. School Dist., 95 N.M. 143, 144, 619 P.2d 819, 820 (1980). Inspection of property may disclose the fact that one party has established a prescriptive easement. Simple inspection will not disclose whether the adjoining owner, who now seeks to put his property up for sale, previously has assented to a boundary consistent with adverse use. He may represent to a buyer that he has not.
Recovery of costs under warranty covenant for defending title from adverse claims. Covenants of title may take various forms. Traditionally, they have included covenants of seisin, right to convey, freedom from encumbrances, warranty, quiet enjoyment, and further assurances. 6A R. Powell, The Law of Real Property ¶ 900[1] (1990). In the wording of the typical warranty covenant, the grantor covenants to warrant and defend the title conveyed by the deed against any lawful claim that may be asserted against it in the future. Id. at ¶ 900[2][d].
*1074 The question of whether a grantee, based upon a warranty covenant, can recover the costs of defending his title has been addressed in many decisions elsewhere, but not by a New Mexico court. E.g., Annotation, Measure of Damages for Breach of Covenants of Title in Conveyances or Mortgages of Real Property, 61 A.L.R. 10, 161 (1929) (supplement, 100 A.L.R. 1194, 1203 (1936)). The majority of these decisions recognize that, as a legitimate outcome of any failure of title, the grantee may recover his costs of defense, including reasonable attorney fees. These costs are held to be a proper element of damages. Id. at 162.
Recovery of costs usually is not allowed, however, when a defense by the grantee is successful. See, e.g., Annotation, Liability of Grantor in Deed with Covenants, for Expense of Grantee's Successful Litigation with Third Party, 105 A.L.R. 729, 731 (1936); 7 G. Thompson, Commentaries on the Law of Real Property § 3204 (1962); 20 Am.Jur.2d Covenants, Conditions, and Restrictions § 151 (1965); see also McDonald v. Delhi Say. Bank, 440 N.W.2d 839 (Iowa 1989); Double L. Properties, Inc. v. Crandall, 51 Wash.App. 149, 751 P.2d 1208 (1988) (dictum); Booker T. Washington Constr. & Design Co. v. Huntington Urban Renewal Auth., 383 S.E.2d 41 (W.Va.1989). Courts have reached this conclusion by interpreting the grantor's promise to defend against "lawful" claims as a promise to defend only against claims that in fact establish paramount title. Consequently, where the grantee has successfully defeated the adverse claim and no paramount title has been established, the grantor cannot be held to have breached either the covenant of title or his promise to defend.
Courts have made exceptions to the latter rule when the grantor bears some responsibility for the litigation between the grantee and a third party. For example, recovery of the costs of a successful defense has been allowed where the litigation was caused by the "grantor's negligence," McDonald, 440 N.W.2d at 843, or when "the wrongful act of the [grantor] thrusts the [grantee] into litigation with a third person." First Fiduciary Corp. v. Blanco, 276 N.W.2d 30, 34 (Minn.1979) (quoting Dworsky v. Vermes Credit Jewelry, Inc., 244 Minn. 62, 70, 69 N.W.2d 118, 124 (1955)).
In order to recover the costs of a defense, most courts also require that the grantor be notified of the suit so the grantor may have a fair opportunity to defend the title or to mitigate his damages by purchasing a paramount title. See Annotation, supra, 61 A.L.R. at 171-74; 20 Am. Jur.2d Covenants, Conditions, and Restrictions § 154 (1965). Some jurisdictions require more than mere notice of the suit and require that the grantee make a specific request upon the grantor to appear and defend. E.g., Morgan v. Haley, 107 Va. 331, 58 S.E. 564 (1907) (reasoning that without the assent of the grantee, the grantor has no authority to assume the conduct of the defense).
Consistent with these general rules, a grantee in some jurisdictions can give proper notice to and make demand upon the grantor and relieve himself of any further responsibility in the suit, and in that way transfer to the grantor the peril of ultimate liability resulting from permitting the claim to go by default or otherwise to prevail. See, e.g., Eaton v. Clarke, 80 N.H. 577, 120 A. 433 (1923); Holzworth v. Roth, 78 S.D. 287, 101 N.W.2d 393 (1960); 21 C.J.S. Covenants § 89 (1940). It has been suggested, however, that this right may not actually give the grantee full protection, Annotation, supra, 105 A.L.R. at 732, since a grantee may have a much greater interest in successfully defending against an adverse claim than in collecting damages. This would seem especially true where the real estate in question involves one's own residence. Under these circumstances, a grantee might have legitimate concerns about turning over to the grantor the defense of even a groundless suit.
With these decisions and considerations in mind, we believe a grantor should have limited liability under our statutory warranty covenants for the costs of a grantee's defense of an adverse claim. Whether the grantor may be held responsible should *1075 depend upon whether the grantor in fact has assumed the risk of those costs. Determinative of that assumption of risk are two factors: (1) whether the grantor bears some responsibility for the substance of an adverse claim, or had actual or constructive knowledge of a potential adverse claim at the time he warranted his title and agreed to defend it, and (2) whether the grantee has made demand of the grantor to defend the title. By "actual or constructive knowledge of a potential claim" we mean awareness of facts that later give rise to the adverse claim, or the existence of recorded title documents that, under NMSA 1978, Section 14-9-2, constitute "notice to all the world." By "demand" we mean notification to the grantor of a suit and specific request that he appear and conduct the defense.
Where demand to defend has been made of a grantor who bears responsibility or had knowledge, the grantor should pay for the costs of defense, regardless of whether defense of the title is successful, because the grantor has substantiated the adverse claim or could have excepted the risk of the potential claim from his warranty covenants. However, when no demand is made of a grantor with responsibility or knowledge, the grantor should pay only if defense of the title is successful. The grantee should not be allowed recovery for an unsuccessful defense because, by not demanding a defense by the grantor, the grantee assumes the risk of losing. The grantee, with some justification, may prefer to defend against the suit himself rather than make a request for the grantor to appear and assume the responsibility for a defense. We do not believe the grantee should be forced to choose between authorizing the grantor to conduct the defense and conducting himself what he may believe is the best possible defense of the adverse claim. The grantee in this case may choose to defend the suit himself, make no request for the grantor to appear, and the grantee still may recover the costs of a successful defense of his title.
Where demand has been made of a grantor who had no responsibility or knowledge, the grantor should pay only if the grantee's defense is unsuccessful because the grantor assumes the risk of not conducting the defense himself;[3] additionally, because he assumes no risk absent responsibility, knowledge, or demand, the grantor who had no responsibility or knowledge should not pay in the absence of a demand, regardless of the outcome. When called upon to defend against the claim, the grantor may decide the suit has no merit and may choose not to defend against it or attempt to work out a compromise. If the claim is not "lawful," the grantor has no duty to defend. However, when the grantor chooses not to appear he assumes the risk of an adverse outcome, and, if a defense by the grantee fails, the grantee may recover as part of his damages the litigation costs he has incurred, including reasonable attorney fees.
It follows in this case that the Blooms are not barred from the recovery of attorney fees from the representative of the P.B. and Frances Hendricks estate. We see no genuine issue of fact about whether the Blooms made a specific request upon either the immediate or remote grantors to appear and defend the adverse title claim by the Lanes. No demand was made. Although the grantors may have been aware of the lawsuit we find this factor alone is insufficient. However, P.B. Hendricks clearly was shown by his affidavit of August 1985 to have had actual knowledge, at the time he warranted his title and agreed to defend it, that for many years the Lanes and he recognized and treated the arroyo as the boundary between the Lanes' tract and the property Hendricks owned. On this basis alone, regardless of whether there may be a genuine issue of fact as to whether, because of his affidavit, P.B. Hendricks bore responsibility for the substance of the Lanes' claim, we hold the personal representative of the estate of P.B. and Frances Hendricks should pay for the costs *1076 of the successful defense against the boundary by acquiescence claim. Because the immediate grantors were not shown to have had responsibility or knowledge, they should have no liability for these costs.
For the above reasons we affirm the judgment of the district court as to the immediate grantors, but reverse as to the remote grantors. This cause shall be remanded to the trial court with instructions to enter a judgment against James Hendricks, as personal representative of the estate of P.B. Hendricks and Frances Hendricks, in favor of the Blooms for reasonable attorney fees incurred at both the trial court and appellate levels for defending against the adverse title claim. The trial court shall apportion the costs of defense to be awarded between the title claim to the 1.474 acres and the prescriptive easement claim to which the warranty covenants did not run. The award shall be limited to the former.
IT IS SO ORDERED.
BACA and MONTGOMERY, JJ., concur.
NOTES
[1] The statement by the Hendricks that the Blooms "were advised of the Lanes' interest" in 1981 is patently misleading. The depositions on which counsel bases this statement only show that, in their discussion with the Blooms, the Lanes acknowledged the oral agreement with P.B. Hendricks for permissive use of the tract.
[2] See Silva v. State, 106 N.M. 472, 745 P.2d 380 (1987) (res judicata, or "claim preclusion," depends upon identity of parties or privies, id. at 474, 745 P.2d at 382, and offensive collateral estoppel, or "issue preclusion," requires that the defendant against whom estoppel is asserted has previously litigated an issue unsuccessfully, id. at 476, 745 P.2d at 384). The Hendricks, as predecessors in title, were not in privity with the Blooms in the latter's defense of the prescriptive easement claim in Lane v. Bloom. 1 A.C. Freeman, A Treatise on the Law of Judgments § 442 (1925).
[3] We express no opinion on the grantor's responsibility in the event of the grantee's default after a tender of the defense, as the grantor may be said not to have assumed the risk of the grantee's default.