Larry B. DAVIS, Marie C. Davis, Jon Sorenson, Betty J. Laporte, David G. Groubert, and Bonnie S. Groubert, Plaintiffs–Appellees,

v.

David Irwin GOURDIN, Ronald Lyle Gourdin, Gustave Dale Gourdin, Columbine Mazza, William A. Staub, Thelma M. Staub, the Board of County Commissioners of Las Animas County, all unknown persons who may have an interest in the subject matter of this action, Defendants,

and

LDS, Inc., Defendant–Appellant.

No. 90CA1724.

Colorado Court of Appeals, Div. III.

April 23, 1992.

George C. Wing, Colorado Springs, for plaintiffs-appellees.

Robert Dunlap, P.C., Robert Dunlap, Colorado Springs, for defendant-appellant.

Opinion by Judge RULAND.

Defendant, LDS, Inc., appeals from that part of the trial court's judgment granting plaintiffs, Larry B. and Marie C. Davis, David G. and Bonnie S. Groubert, and Bet-

ty J. Laporte, $25,155 in attorney fees. We affirm in part, reverse in part, and remand with instructions.

In 1971, LDS obtained approval from Las Animas County for the Spanish Highlands subdivision. Plaintiffs purchased three adjacent parcels of land in the subdivision from LDS.

To access their parcels, each plaintiff used a road which crossed both a parcel of land owned in co-tenancy by defendants, David I., Ronald L., and Gustave D. Gourdin and Columbine Mazza, and a second parcel owned by defendants, William A. and Thelma M. Staub (the Record Owners). The parties in effect agree that a warranty of the right to use the road was included as an appurtenance in the Colorado statutory short form warranty deeds from LDS to plaintiffs. *See* § 38–30–113, C.R.S. (1982 Repl.Vol. 16A).

In 1975, Ronald Gourdin, representing himself as the sole owner of all the land traversed by the road, sold an easement to LDS and its successors for use of the road. Further, in 1979, LDS and the Davises entered into an indemnity agreement whereby LDS guaranteed to the Davises a private right-of-way across the road. In addition, this agreement provided that LDS would defend and hold the Davises harmless against any claims or disputes concerning the road.

Following a series of incidents involving the road, in 1986, plaintiffs brought suit against the Record Owners, the County, and LDS, requesting injunctive and declaratory relief as well as attorney fees from LDS.

Specifically, plaintiffs alleged that defendant David Gourdin prevented them from grading and maintaining the road and that, on one occasion, Gourdin prevented their use of the road by erecting a fence across it. Plaintiffs requested an injunction to prevent the Record Owners from interfering with their use or maintenance of the road.

As to their declaratory claim, plaintiffs requested judgment determining either that their access road was a public road and should be maintained by the County or

that they had a private easement to use and to maintain the road based on prescriptive use. The claims against the Record Owners and the County were severed for trial prior to resolution of plaintiffs' claim for attorney fees against LDS.

Following trial of the claims against the Record Owners and the County, the court first ruled that the access road was not a public road and that, therefore, it need not be maintained by the County. However, the trial court also ruled that plaintiffs and their predecessors had used the road openly and continuously since 1917 and, consequently, they had acquired a prescriptive easement for that use.

Following trial of the claim against LDS, the court awarded attorney fees of $25,155 to plaintiffs. As to the Davis plaintiffs, the award was based upon the indemnity agreement, breach of deed warranty, and the wrongful acts doctrine. As to the other plaintiffs, the award was based upon the breach of deed warranty and the wrongful act doctrine.

I

■ LDS initially contends that there was no breach of the warranties in its deeds to plaintiffs and that, therefore, the court erred in awarding fees on this theory. The basis for this argument is the trial court's finding that plaintiffs acquired rights to use of the road by prescription. As a result, LDS concludes that it had no duty under the deeds to defend claims asserted by "trespassers" because § 38–30–113(2)(c), C.R.S. (1982 Repl.Vol. 16A) obligates LDS to defend the title only against "lawful claims." Under the circumstances of this case, we concur with the trial court's ruling.

It is undisputed that LDS had secured a conveyance authorizing use of the road from only one of the Record Owners. *See Seyfried v. Knoblauch*, 44 Colo. 86, 96 P. 993 (1908) (conveyance of a smaller fractional interest than represented in deed violates warranty). Conversely, the Record Owners may not properly be characterized as trespassers because they retain rights to

use the road as well. Finally, to enforce judicially the prescriptive title, it was necessary for plaintiffs to obtain a decree defining their right of use as against the Record Owners. *See Spring Valley Estates, Inc. v. Cunningham,* 181 Colo. 435, 510 P.2d 336 (1973). Under these circumstances, we conclude that the Record Owners held a "lawful claim" and the issue for resolution was the extent of that claim.

Further, contrary to the argument of LDS, we do not view *Stearns v. Jewel,* 27 Colo.App. 390, 149 P. 846 (1915), and *Rittmaster v. Richner,* 14 Colo.App. 361, 60 P. 189 (1900) as requiring that an award of fees be denied because the claims of the Record Owners have been adjudicated as "unlawful." In *Stearns,* the court held that there was no breach of deed warranty because the possession of a part of the deeded property was relinquished when the possessor learned that the parcel was not within the boundaries of his property. In *Rittmaster,* a tenant of the grantor refused to give up possession to the grantee based upon false allegations that the tenant had acquired a tax title for the property.

Unlike *Stearns* and *Rittmaster,* here, as noted, the Record Owners have lawful claims to the road and the issue resolved was the extent of their rights. As a result, attorney fees to establish rights to use the road were properly awarded as damages for breach of the deed warranties. *See Smith v. Keeley,* 146 Iowa 660, 125 N.W. 669 (1910) (grantee is entitled to attorney fees for defeating outstanding legal title lost through laches); *Bloom v. Hendricks,* 111 N.M. 250, 804 P.2d 1069 (1991) (grantee entitled to recover attorney fees for defending title if grantor had actual or constructive notice of a potential adverse claim at time of conveyance); Annot., 61 A.L.R. 10 at 161 (1929).

## II

■ LDS next alleges that before bringing suit against the Record Owners, plaintiffs did not afford LDS the "opportunity" to litigate the parties' rights regarding use of the road. We find no merit in this contention.

Even if we assume that being named as a party defendant in the litigation did not provide LDS the opportunity to contest the claims of the Record Owners, *see Seyfried v. Knoblauch, supra,* LDS did not assert this type of affirmative defense in its pleadings or pre-trial data certificate. Therefore, it is precluded from asserting this contention for the first time on appeal. *See Matthews v. Tri–County Water Conservancy District,* 200 Colo. 202, 613 P.2d 889 (1980).

## III

■ LDS next contends that the trial court erred in awarding attorney fees to any of the plaintiffs for their attempt to establish that portions of the road were public and to establish that the County was, therefore, obligated to maintain the road. We agree.

Plaintiffs do not contend that the warranty in the statutory form deeds from LDS may be construed as including a guarantee that the road was a public road. On the other hand, and contrary to plaintiffs' contention, the County may not be characterized as a party for purposes of the initial trial asserting rights to the road adverse to plaintiffs. The County opted not to participate in the trial, but agreed to be bound by the court's decision as to the road's status. In addition, the County did not file any pleading contesting any of plaintiffs' claims. Hence, we find no basis in the record for awarding fees for breach of deed warranty.

Finally, there is no basis for us to conclude that the Davis indemnity agreement authorized recovery of fees for any legal work done on the public road theory. In its agreement with the Davises, LDS guaranteed:

> to defend and hold harmless [the Davises] from any disputes and claims by any third party *concerning the use by [the Davises] of the access road and [the Davises] the right to maintain the road* in it's (sic) presently existing state. (emphasis added)

Hence, plaintiffs' request to have the road declared public does not constitute a dispute over the Davises' right to use or to maintain the road. *See Wilson & Co. v. Walsenburg Sand & Gravel Co.,* 779 P.2d 1386 (Colo.App.1989) (prevailing party not entitled to attorney fees for litigation beyond the scope of the indemnity agreement).

And, we may not add obligations to the indemnity agreement not included by its express terms. *See Trosper v. Wilkerson,* 764 P.2d 375 (Colo.App.1988). As a result, we conclude that the agreement between LDS and the Davises did not cover attorney fees for attempting to declare the road public.

## IV

■ LDS further contends that the trial court erred in allowing attorney fees under the wrongful act doctrine. We address this issue insofar as fees were awarded for plaintiffs' efforts to establish the road as a public road.

The wrongful act doctrine authorizes an award of fees as damages for wrongful conduct, the natural and probable consequence of which is to involve another in litigation with others. *See Feit v. Donahue,* 826 P.2d 407 (Colo.App.1992). However, LDS argues that neither in the plaintiffs' amended trial data certificate nor in the pleadings were attorney fees claimed on this theory. Accordingly, LDS asserts that plaintiffs were precluded from also claiming attorney fees on this basis. We agree.

Pursuant to C.R.C.P. 16(c), "information provided in a party's Disclosure Certificate, as supplemented, shall be binding on that party." *See also North York Land Associates v. Byron Oil Industries, Inc.,* 695 P.2d 1188 (Colo.App.1984). Here, in plaintiffs' amended trial data certificate, no request was made for attorney fees predicated upon the wrongful act doctrine.

Moreover, contrary to plaintiffs' contention, we agree with LDS that a request for attorney fees on this theory was not tried by implied consent pursuant to C.R.C.P. 15(b).

In discussing an objection by LDS to certain evidence early in the trial, counsel for plaintiffs indicated, in effect, that he was relying upon the wrongful act doctrine in part to sustain an award of fees. LDS responded that the complaint asserted only rights under the deed warranty and the Davis indemnity agreement and that this issue was not before the court. Therefore, we conclude that the issue was not tried by consent. *See Real Equity Diversification, Inc. v. Coville* 744 P.2d 756 (Colo.App. 1987).

## V

■ Last, LDS contends that the trial court improperly allowed plaintiffs to recover attorney fees for pursuing their claims against LDS. Plaintiffs respond that these fees were awarded properly by the court because a quiet title action is an equitable proceeding in which such an award is authorized. Plaintiffs also argue that because fees for the actual trial against LDS were not included and because the hours involved in researching the indemnity issues were deducted, the court's award was proper. Finally, plaintiffs contend that LDS waived this contention by failing to object until after the court announced its findings and conclusions. However, we agree with LDS.

With reference to plaintiffs' theory, founded upon the court's equitable power in a quiet title action, we note that our supreme court has declined to deviate from the "American Rule," which authorizes fees (in this context) only when a contract, court rule, or statute so provides. *See Bunnett v. Smallwood,* 793 P.2d 157 (Colo. 1990). Hence, we may not deviate from that rule here. *See Rhodes v. Copic Insurance Co.,* 819 P.2d 1060 (Colo.App.1991).

■ And, our supreme court has applied this rule to an indemnity agreement and held that an indemnitee is not entitled to attorney fees incurred in connection with trial of the indemnity issues. *Sun Indemnity Co. v. Landis,* 119 Colo. 191, 201 P.2d 602 (1948).

We also reject plaintiffs' waiver theory because our review of the record persuades us that this contention was preserved. In its pleadings and in closing argument after presentation of evidence, LDS consistently maintained that no fees were owed to any plaintiffs under either the deed warranty theory or the Davis indemnity agreement. Further, in addressing the Davis indemnity agreement, counsel for LDS pointed out the lack of any clause in the agreement authorizing an award of fees for the litigation "to make LDS pay" fees. Under these circumstances, we conclude that LDS did not waive this contention.

Finally, with the exception of research time on indemnity, our review of the documentary evidence submitted by plaintiffs reflects that there was no delineation of the time expended on the claims against the Record Owners, as distinguished from the time expended on the claims against LDS prior to the initial trial. Hence, it necessarily follows that at least some of the fees allowed included time expended in pleading and preparing evidence for the claim against LDS.

We need not address LDS' other contentions of error.

The judgment is affirmed except as to the award of fees for plaintiffs' claim to establish that the road was public and for pleading and preparing evidence for the claim against LDS. That part of the judgment is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

METZGER and JONES, JJ., concur.