1998-NMCA-066

959 P.2d 533

**Dennis R. GARCIA, Plaintiff,**

v.

**Rudolfo Abenicio HERRERA,
Defendant/Third–Party
Plaintiff–Appellee,**

v.

**Joe C. MARTINEZ and Lovie Martinez,
Defendants/Third–Party Cross–
Claimants–Appellants.**

No. 17942.

Court of Appeals of New Mexico.

Feb. 9, 1998.

Certiorari Denied May 5, 1998.

Annie–Laurie Coogan, Espanola, for Appellee.

Ruben Rodriguez, Santa Fe, for Appellants.

*OPINION*

APODACA, Judge.

1. Third–Party Defendants (Grantors) appeal the trial court's judgment in favor of Defendant/Third–Party Plaintiff (Grantee) awarding damages, costs, and attorney fees for breach of warranty of title and failure to defend. Grantors argue five issues on appeal: (1) the trial court lost jurisdiction over the breach of warranty claims following Grantee's settlement with Plaintiff, (2) Grantee was required to defend title, (3) the settlement prevented Grantors from defending the title, (4) the trial court should have adopted Grantors' requested findings and conclusions, and (5) the trial court should have granted Grantors' recusal request. We hold that the judgment is supported by the law and evidence and therefore affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. Plaintiff filed a complaint in ejectment against Grantee seeking to have Grantee removed from certain property in Rio Arriba County. Grantee counterclaimed to quiet title in himself and filed a third-party complaint against Grantors for breach of warranty of title and attorney fees. The case was bifurcated by the trial court as follows: the ejectment and quiet title issues were first set for trial. The breach of warranty and attorney fees issues would be decided at a later hearing, if necessary.

3. On the trial date, the parties presented their exhibits and opening arguments. The trial court then asked if Plaintiff and Grantee would consider settling. It noted that each party risked losing everything because the court did not have the lawful authority to partition the property as a remedy. The trial court suggested that Plaintiff and Grantee split the property in two, reasoning that the evidence suggested each only had a half interest in the property based on their chain of title.

4. After a private discussion, Plaintiff and Grantee agreed to split the property. Grantee's only concern at the time was whether this agreement would prejudice his claim against Grantors. The trial court opined

that it would not. Grantors agreed to the settlement, but in so doing maintained that Grantee gave up any right to recover attorney fees and damages for breach of warranty and failure to defend.

5. The trial court settled the claims between Plaintiff and Grantee by dividing the property in half. Grantee's claim against Grantors was then scheduled for hearing. That claim too was bifurcated. The trial court indicated it would initially consider whether there was a warranty and whether that warranty had been breached. If that question was decided affirmatively, there would be a separate hearing on damages. After the first hearing, the trial court determined that there was a warranty of title. The trial court also held that this warranty had not been waived and that Grantors had breached it. The trial court later held a hearing on damages. Grantee was awarded attorney fees and costs to defend his title and damages for the loss of the value of the property. Grantors appeal these rulings.

## II. DISCUSSION

### A. Standard Of Review

■ 6. We review conclusions of law de novo, *see Strata Prod Co. v. Mercury Exploration Co.*, 1996–NMSC–016, 121 N.M. 622, 627, 916 P.2d 822, 827, and consider substantial evidence claims with deference to the trial court. *See Clovis Nat'l Bank v. Harmon*, 102 N.M. 166, 168, 692 P.2d 1315

### B. Jurisdiction

■ 7. Initially, Grantors argue that, at the time of the settlement between Plaintiff and Grantee, the trial court lost jurisdiction over the remainder of the claims. This argument is based on the premise that Grantee voluntarily relinquished possession of the property. Grantor thus contends that Grantee either waived his claim for breach of warranty or was estopped from making the claim. We need not reach the issues of waiver or estoppel, however, because we hold that Grantee's title failed irrespective of the settlement. We also note that this is not a case where the trial court lost jurisdiction to hear certain matters. *See Sundance Me-*

*chanical & Util. Corp. v. Atlas*, 109 N.M. 683, 686–87, 789 P.2d 1250, 1253–54 (1990). Instead, it is simply a case where one claim has been settled, leaving others to be decided. *See Johnson v. Aztec Well Servicing Co.*, 117 N.M. 697, 701, 875 P.2d 1128, 1132 (Ct. App.1994) (holding that a settlement between two parties does not discharge the liability of any other persons). The trial court did not lose jurisdiction to consider the breach of warranty claims.

8. In 1984, Grantee and Grantors exchanged two pieces of property. Grantee received 2.2 acres and Grantors received 4 acres. At the time of the exchange, both received warranty deeds for their respective properties. A transfer of property under a warranty deed means that:

"the grantor . . . covenants with the grantee . . . that he [or she] is lawfully seized in fee simple of the granted premises; that they are free from all former and other grants, . . . and encumbrances of what kind and nature soever; that he [or she] has good right to sell and convey the same; and that he [or she] will . . . warrant and defend the same to the grantee . . . forever against the lawful claims and demands of all persons."

NMSA 1978, § 47–1–37 (1947). In a typical warranty deed, "the grantor covenants to warrant and defend the title conveyed by the deed against any lawful claim." *Bloom v. Hendricks*, 111 N.M. 250, 254, 804 P.2d 1069, 1073 (1991). Here, by giving Grantee a warranty deed, Grantors promised that they had good title and that they would defend it against any lawful claim.

9. As early as 1989, Plaintiff told Grantee that the property belonged to him. Grantee went to the Grantors about the problem. Nothing was done. Later in 1989, Plaintiff sent a letter to Grantee, again asserting that the property was his and that he wanted Grantee off the land. Grantee approached Grantors and asked them for help. They gave him some money to obtain an abstract of title. Plaintiff then filed suit and Grantee's attorney requested several times by letter that Grantors assume the defense of the title. They refused to do so. When the trial commenced, Grantee decided to settle for a

portion of the property. As a result of that settlement, Grantors argue that Grantee gave up his right to claim a breach of warranty.

10. This argument is twofold. First, a breach of warranty deed exists only upon ejectment by a claimant with superior title, which according to Grantors was never established here. Second, Grantee himself failed to defend the title. Clearly, ejectment requires superior title. *See* NMSA 1978, § 42–4–1 (1907); *see also Pacheco v. Martinez,* 97 N.M. 37, 41–42, 636 P.2d 308, 312–13 (Ct.App.1981). Ejectment on superior title is a lawful claim against which the grantor of a warranty deed has agreed to defend. Ejectment on superior title is a breach of the warranty of good title. *Knight v. Cox,* 31 N.M. 325, 245 P. 250 (1926). We thus agree that a claim of breach of warranty of title may be supported by an ejectment. *See* 9 *Thompson on Real Property* § 82.10(c)(4) (David A. Thomas, Editor–in–Chief 1994).

11. Here, Grantee's settlement with Plaintiff ejected Grantee from one half of the property. The question is whether his ejection was by one with lawful, superior title. Grantors claim that there is no way to determine whether or not Plaintiff's claim was lawful because the matter was settled. We disagree. The trial court could and did evaluate the evidence of title and determined that the settlement was a reasonable one, based on the evidence. Thus, the trial court determined that the claim by Plaintiff was a lawful one. We believe that the evidence supported that determination.

12. The evidence showed that in 1956 the property was conveyed by quitclaim deed to Jose Baldonado. In 1961, an inscription was placed on the deed directing the inclusion of Antonita Baldonado, Jose's Baldonado's ex-wife, on the deed. In 1974, Antonita Baldonado conveyed the property by warranty deed, which was recorded, to Grantors. In 1975, there was an unrecorded deed from Jose Baldonado to Grantors for the same property. In 1976, Jose Baldonado conveyed the property by recorded quitclaim deed to Den–Gar Enterprises. In 1984, Grantors conveyed the property by warranty deed to Grantee. In 1989, Den–Gar conveyed the

property to Plaintiff by quitclaim deed. Plaintiff had a lawful claim to the property based on his chain of title from Jose Baldonado.

13. The settlement ejecting Grantee from one half of the property resulted from a lawful claim by one with superior title. Consequently, there was a partial failure of Grantee's title entitling him to bring an action for breach of warranty. His title failed regardless of the fact that the failure was due to a settlement of the claims. Plaintiff filed suit against him, and there was a final judgment adverse to Grantee's title or right to possession of the property. This is sufficient to constitute an eviction. *See Saint Paul Title Ins. Corp. v. Owen,* 452 So.2d 482, 485 (Ala.1984). Our holding affirms denial of Grantors' motion for summary judgment. *See Rummel v. Saint Paul Surplus Lines Ins. Co.,* 1997–NMSC–042, ¶ 9, 123 N.M. 767, 945 P.2d 985 (holding that reviewing court considers whether summary judgment is appropriate under the law).

## C. Defense Of Title

14. Grantors argue that Grantee made no effort to defend his title and, thus, may not bring an action for breach of warranty. We disagree. After evaluating Plaintiff's claim and the evidence supporting both Grantee's and Plaintiff's claims, Grantee decided to give up a portion of the property rather than lose it entirely. We determine that this was not a failure to defend title. Rather, it was a voluntary settlement of the dispute between Plaintiff and Grantee regarding title to the property. Our public policy favors such settlements. *Gonzales v. Atnip,* 102 N.M. 194, 195, 692 P.2d 1343, 1344 (Ct.App.1984). We believe a decision requiring Grantee to fully litigate the title prior to making a claim for breach of warranty would violate that public policy. We decline to so hold. *See Gallegos v. State Bd. of Educ.,* 1997–NMCA–040, ¶ 18, 123 N.M. 362, 940 P.2d 468.

15. Additionally, there is no requirement that Grantee defend his title to the bitter end. *See Schneider v. Lipscomb County Nat'l Farm Loan Ass'n,* 146 Tex. 66,

202 S.W.2d 832, 835 (1947). He may voluntarily yield to a claim of paramount title and still claim a breach of warranty. *See* 20 Am.Jur.2d *Covenants, Conditions, and Restrictions* § 56 (1995) (constructive eviction exists where the grantee yields to the hostile assertion of an adverse paramount title).

### D. The Settlement

■ 16. Grantors also claim that Grantee's settlement prevented them from defending the title. They argue that they were prepared to show that Grantee had superior title and were denied their right to prove that fact. Grantors contend that this denial violated their right to due process and prevented Grantee from claiming that they breached their warranty to defend his title. We disagree. Grantors rely on *Burge v. Mid–Continent Casualty Co.*, 1997–NMSC–009, 123 N.M. 1, 933 P.2d 210 (1996), for their arguments. *Burge* is easily distinguishable. In *Burge*, the insured filed an action against an uninsured motorist. The insurance company was precluded from intervening in the case. The uninsured motorist defaulted, and the trial court determined that the insurance company was bound by the default. Consequently, the trial court entered judgment against the insurance company. Our Supreme Court reversed the judgment, holding that the insurance company could not be bound by the default because it was not given sufficient notice and adequate opportunity to intervene in the action. *Id.* ¶ 20.

17. In this appeal, Grantors were asked from the date Plaintiff made his claim to the property to defend the title they had conveyed to Grantee. They refused numerous times to do so. They were also included in the lawsuit from the beginning. Grantors could have objected to the settlement or asked that it be postponed pending a determination of their claims of waiver of warranty. The record does not reflect that Grantors were ever precluded from attempting to establish superior title to the property. In fact, they presented some evidence on adverse possession at the trial on the breach of warranty in an attempt to show that Plaintiff's title was not paramount. Consequently, based on the facts of this case, we determine that Grantors were not denied their right to due process as a result of the settlement between Plaintiff and Grantee. Rather, the record shows that they received notice of the claim and were given ample opportunity to respond.

### E. The Trial Court's Findings And Conclusions

■ 18. Grantors contend that there was insufficient evidence to support the trial court's findings and conclusions. On a claim of insufficiency of the evidence, this Court resolves "all disputed facts in favor of the successful party" and indulges "all reasonable inferences in support of a verdict." *Clovis Nat'l Bank*, 102 N.M. at 168, 692 P.2d at 1317. We disregard all contrary evidence. *See id.* at 168–69, 692 P.2d at 1317–18. We do not reweigh the evidence or substitute our judgment for that of the trier of fact. Based on the evidence in the record, we affirm the trial court's findings.

■ 19. The trial court found that there was no written or oral waiver of the warranties in the warranty deed. Grantors argue that the trial court overlooked the waiver made as a result of the approved settlement. As we noted earlier, this settlement did not establish a waiver. At trial, Grantors argued that, at the time of the transfer of the properties, Grantee orally agreed to accept $2,000 in exchange for a waiver of their warranty to defend title. Grantors testified that they agreed to give Grantee $2,000 if at any time he had to defend the title. They testified they gave him that amount to help defend the title. Grantee testified that there was no such agreement. He also testified that the money given to him was partially for construction work he had done for Grantors and to obtain an abstract. The trial court determines credibility. In this case, the trial court ruled that there was insufficient proof of an offer and acceptance of a $2000 payment for a waiver of warranty covenants and, as previously noted, that there was no written or oral waiver. The evidence supported this determination.

■ 20. The trial court found that it was reasonable for Grantee to settle with Plaintiff and to give one half of the land to

him. As we previously stated, there was ample evidence to support the reasonableness of the settlement. There was a good chance based on the evidence of title that Grantee would lose the entire property. Rather than lose his home, he agreed to a division of the property. Grantors' evidence supporting adverse possession was slim, and the trial court could have determined that it would not have satisfied the clear and convincing standard. *See Williams v. Howell,* 108 N.M. 225, 227, 770 P.2d 870, 872 (1989) (claimant by adverse possession must prove by clear and convincing evidence elements required). Thus, based on the facts of this case, it was reasonable for Grantee to settle.

21. The evidence established that there were several requests made to Grantors to take over the defense of the title. All of those requests were denied. Thus, the evidence supported the court's finding that Grantors refused to defend despite the requests to do so.

22. There was sufficient evidence for the trial court to have found that Grantors knew of the outstanding deed and failed to except it from the warranty deed they gave to Grantee. There was testimony from Grantors that they knew of the outstanding deed to Den–Gar Enterprises. The warranty deed on its face did not except that deed.

23. The evidence showed that Grantee was an innocent purchaser for value. He traded four acres for 2.2 acres and the warranty deed that he received did not except Plaintiff's outstanding deed. Nor was there any evidence that he knew about an outstanding deed to Plaintiff. Thus, he was a bona fide purchaser for value.

24. Finally, the trial court found that Grantee was damaged by the failure of Grantors to defend his title and by the breach of the warranty of title. "The general effect of a warranty covenant is that the grantor agrees to compensate the grantee for any loss suffered by reason of the failure of title [that] the deed purports to convey." *Bloom,* 111 N.M. at 254, 804 P.2d at 1073. Relying on *Bloom,* the trial court awarded damages of Grantee's attorney fees and costs in defense of the title. The trial court also

granted the value of the relinquished property, and 10% interest compounded annually.

25. Grantors argue that, without a finding of breach of warranty and eviction of Grantee, there can be no finding of damages, in these circumstances. We do not agree that there was no finding of a warranty breach and of Grantee's eviction. Findings are to be liberally construed to support the judgment and are sufficient if a fair consideration of them, taken together, justifies the judgment. *Kincaid v. WEK Drilling Co.,* 109 N.M. 480, 486, 786 P.2d 1214, 1220 (Ct. App.1989). Here, the findings showed that Grantee gave up a portion of his property. That was an eviction. The findings also represented that Grantors knew of the outstanding deed, did not except it from the warranty, and refused to defend title. As a result, the warranty was breached. A liberal examination of the trial court's findings indicates that there was a partial failure of Grantee's title and that Granters refused to defend against a lawful claim. The evidence indicated that Grantee was damaged by the breach.

26. Grantee was required to employ an attorney to defend his title and to file a claim for breach of warranty. Evidence was presented regarding the amount of time expended on Grantee's case and the usual billing rates for the three attorneys who worked on the case. The trial court's award of $16,745 plus $1,192.30 for costs was supported by that evidence.

27. Grantee also lost the value of the 1.22 acres that he gave up in the settlement. Grantee presented evidence that the value of an acre of land in this area was between $22,000 and $25,000. This evidence was based on local arms-length sales. Grantors presented evidence that the property was worth no more than $2,000 to $4,000 per acre. This claim was based on transactions among friends and relatives. The trial court found that the value was $15,000 per acre. The trial court awarded lost value in the amount of $18,000 for 1.22 acres.

28. The trial court also found that Grantee was entitled to interest on that lost value because the value of property in this area was increasing and likely to continue

increasing. A real estate broker testified that properties in this area had increased in value at the rate of 20% during 1993–95. The broker believed that appreciation would continue at a minimum rate of 10% per year. Thus, the evidence supported the trial court's award of 10% annual interest from the time of the claim in 1989 until ten years following the trial date.

29. Grantors contend that the trial court erred in refusing certain requested findings and conclusions. Requested findings and conclusions that conflict with those found by the trial court and supported by substantial evidence are properly refused. *See Thigpen v. Rothwell*, 81 N.M. 166, 168, 464 P.2d 896, 898 (1970); *Den–Gar Enters. v. Romero*, 94 N.M. 425, 430, 611 P.2d 1119, 1124 (Ct.App.1980). Here, the requested findings and conclusions that were refused conflicted with the trial court's findings and conclusions. As we stated earlier, those findings were supported by substantial evidence. It was therefore not error to refuse Grantors' requested findings and conclusions.

### F. Recusal

30. The trial court is required to recuse itself from hearing a case when it cannot preside in a fair and impartial manner. *See State v. Cherryhomes*, 114 N.M. 495, 500, 840 P.2d 1261, 1266 (Ct.App.1992). Grantors contend that the trial court expressed its decision on the merits of the cross-claim before hearing any evidence on the matter. They contend this shows a bias and predisposition on the part of the trial court. We have reviewed the record at those places where Grantors contend there were such expressions. We do not view the statements made by the trial court as evidencing a predisposition in this case. Rather, the trial court was noting that the issues between Grantee and Grantors still remained and that the court would reserve ruling on them. The trial court did state its opinion of the law concerning waiver of breach of warranty by settling. This was an issue of law about which the trial court could express its opinion. There were no facts required for such a decision. We do not view such an expression as a preconceived ruling without the benefit of facts. The record does not indicate that the trial court proceeded unfairly or partially. There was thus no basis for the motion to recuse, and denial of the motion was appropriate.

### III. CONCLUSION

31. The trial court did not lose jurisdiction over the breach of warranty claims as a result of the settlement between Plaintiff and Grantee. Grantee was ejected from one half of the property conveyed to him by warranty deed. That ejectment constituted a breach of warranty. Grantors' refusal to defend the title to the property was likewise a breach of warranty. Grantee's settlement did not prevent them from defending the title. Grantee was entitled to damages as a result of that breach. The evidence supported the amount awarded. Finally, the trial court did not demonstrate bias against Grantors. The judgment is affirmed.

32. **IT IS SO ORDERED.**

DONNELLY and FLORES, JJ., concur.